## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| 7 SPRINGS ELECTRONICS, INC. | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | **Civil Action Number:** |
| vs. | ) | _____ |
| | ) | |
| PARTS HANGAR, INC., | ) | |
| INTEGRATED PUBLISHING, INC. | ) | |
| and RICHARD OSBORNE, Individually | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

## VERIFIED COMPLAINT FOR VIOLATIONS OF THE COMPUTER FRAUD AND ABUSE ACT, GEORGIA COMPUTER SYSTEMS PROTECTION ACT, GEORGIA RICO, TRESPASS, CONVERSION, UNJUST ENRICHMENT, AND PRAYER FOR INJUNCTIVE RELIF

COMES NOW Plaintiff 7 SPRINGS ELECTRONICS, INC. (hereinafter, "7 Springs") by and through its attorneys, and files this its Verified Complaint for violations of The Computer Fraud and Abuse Act, Georgia Computer Systems Protection Act, Georgia RICO, Trespass, Conversion, Unjust Enrichment and Prayer for Injunctive Relief Defendants PARTS HANGAR, INC. (hereinafter, "Parts Hangar"), INTEGRATED PUBLISHING, INC. (hereinafter, "Integrated"), and RICHARD OSBORNE (hereinafter, "Osborne") (hereinafter, collectively the "Defendants") and states as follows:

## JURISDICTION AND VENUE

1.

7 Springs is a Florida subchapter S corporation with its nerve center and principal place of business at 105 Weatherstone Drive, Suite 650, Woodstock, Georgia 30188.

2.

7 Springs has filed with the Georgia Secretary of State to qualify to do business in Georgia. *See* **Exhibit "1"**, which is incorporated herein by reference.

3.

Parts Hangar is a Florida domestic corporation with its principal place of business at 10229 Key Lantern Drive, New Port Richey, Florida 34654.

4.

Integrated is a Florida domestic corporation with its principal place of business at 10229 Key Lantern Drive, New Port Richey, Florida 34654.

5.

Pursuant to Fla. Ann. Stat. § 48.081 (1)(a) Parts Hangar may be served with the Summons and Complaint through its President Erly Osborne, at 10229 Key Lantern Drive, New Port Richey, Florida 34654.

6.

Pursuant to Fla. Ann. Stat. § 48.081 (1)(a) Integrated may be served with the Summons and Complaint through its Vice President Erly Osborne, at 10229 Key Lantern Drive, New Port Richey, Florida 34654.

7.

Osborne is the President of Integrated, and the Vice President of Parts Hangar, and he may be served with the Summons and Complaint at his residence: 10229 Key Lantern Drive, New Port Richey, Florida 34654.

8.

This Court has subject matter jurisdiction of this civil action pursuant to 28 U.S.C. § 1331 because it arises under federal law, specifically the Computer Fraud and Abuse Act codified at 18 U.S.C. § 1030 *et seq*.

9.

This Court has supplemental jurisdiction over all of Plaintiff's claims arising under state law pursuant to 28 U.S.C. § 1367.

10.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims asserted and damages consequently incurred occurred in this District.

## FACTUAL BACKGROUND

### 11.

Founded in 2007, 7 Springs is one of the world's largest independent stocking distributors of electronic components with locations in the United States, Asia, Mexico, and the United Kingdom. These components include, without limitation, integrated circuits, passive components, and interconnect products.

### 12.

Specifically, 7 Springs purchases excess electronic component inventories and remarkets globally through its worldwide contacts and experienced sales staff. 7 Springs remarkets these components through services that include lot purchasing, consignment arrangements, end-of-life buys, and asset recovery.

### 13.

7 Springs is a strategic partner for manufacturers including AMD, Analog Device, Fairchild Semiconductor, Infineon, Intel, International Rectifier, Maxim, National Semiconductor, and Vishay Intertech. 7 Springs also supplies many of the large franchise distributors.

### 14.

7 Springs conducts a substantial portion of its business using its online presence and internet sales, specifically through its active website.

15.

Parts Hangar is a corporation purportedly engaged in the same or similar business as 7 Springs.

16.

Integrated purports to be a leading online source of military specifications and educational publications.

17.

Parts Hangar's website describes the synergy between itself and Integrated as one in which customers can "cross-referenc[e] the extensive database that [Integrated] possesses" and "access . . . parts listed in the online training manuals and educational items as listed by the . . . NSN (National Stock Number) as well as military part number." *See* "Parts Hangar Website—About Us" a true and accurate copy of which is attached hereto as **Exhibit "2"** and incorporated herein by reference.

18.

Upon information and belief, Integrated existed in some form prior to the creation of Parts Hangar. *See* "Electronic Articles of Incorporation—Integrated Publishing, Inc." a true and accurate copy of which is attached hereto as **Exhibit "3"** and incorporated herein by reference.

19.

Upon information and belief, Parts Hangar had been a dormant and inactive corporation for approximately two (2) years up until October 2013.

20.

Upon information and belief, Parts Hangar was reactivated on or around October 14, 2013. *See* "Electronic Articles of Incorporation—Parts Hangar, Inc." a true and accurate copy of which is attached hereto as **Exhibit "4"** and incorporated herein by reference.

21.

Sometime in 2007, 7 Springs engaged Osborne to design its current website located at: http://www.7springselectronics.com (hereinafter, the "Website").

22.

Sometime in 2007, Osborne and 7 Springs President, founder, and owner, Rod Cook, executed a contract that setout the services to be provided by Osborne in delivering the Website.

23.

Since late 2007, 7 Springs has used the Website designed and delivered by Osborne.

24.

The Website accounts for most, if not all, of 7 Springs' business as customers rely on its product list to stay informed about what 7 Springs offers.

25.

Upon information and belief, Osborne retained access to the HyperText Markup Language (hereinafter, "HTML Code") that controls the Website's functions.

26.

On August 31, 2013, 7 Springs President, founder, and owner, Rod Cook, suddenly passed away.

27.

Rod Cook's ex-wife, Audrey Cook, has been appointed by the Estate of Rod Cook's Personal Representative to serve as the President and Chief Executive Officer for 7 Springs.

28.

Parts Hangar came into existence approximately six (6) weeks _after_ Rod Cook's death.

29.

Upon information and belief, Osborne—on behalf of Parts Hangar and Integrated—and sometime shortly after Rod Cook's passing, improperly and without either authority or permission, accessed the Website and altered the HTML Code controlling the hyperlinks associated with parts numbers listed on the Website's inventory such that these hyperlinks now redirect website visitors to Parts Hangar's website.

30.

Upon information and belief, Defendants "hacked" into 7 Springs' Website.

31.

Upon information and belief, Defendants "hacked" into 7 Springs' computer system.

32.

Upon information and belief, Osborne altered the hyperlinks associated with the parts listed at the following web address: http://www.7springselectronics.com/products.htm.

33.

As a result of Defendants hacking of the Website, now when customers click on the parts numbers listed on the webpage

http://www.7springselectronics.com/products.htm, they are redirected to Defendant Parts Hangar website (*e.g.*, http://0-1.components-source.com).

34.

Upon information and belief, these redirected customers are now purchasing products from Parts Hangar instead of 7 Springs.

35.

Upon information and belief, 7 Spings' customers and potential customers are confused as a result Defendants redirecting web traffic from the Website to Parts Hangar.

36.

Upon information and belief, Defendants took this action to drive business to Parts Hangar in support of its relationship with its sister company Integrated.

37.

Upon information and belief, 7 Springs ceased to receive customer orders because these customers were being redirected to the Parts Hangar website and are, therefore, ordering parts from Parts Hangar.

38.

These customers continue to be redirected to the Parts Hangar website and 7 Springs continues to be harmed as a result.

39.

7 Springs has lost name recognition, customers, customer traffic, and thousands of dollars as a direct result of Defendants' actions.

40.

7 Springs has been damaged in an amount to be proven at trial.

41.

Prompted by the sudden and significant decline in customer orders, a 7 Springs employee discovered the Website's visitors were being redirected to the Parts Hangar website if and when they "clicked" on the hyperlinks associated with parts numbers listed on the Website—specifically, the webpage referenced in Paragraph 26.

42.

On December 13, 2013 Audrey Cook engaged the undersigned attorneys to bring this action and obtain injunctive relief against Defendants.

## CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF 18 U.S.C. § 1030(e) OF
### THE COMPUTER FRAUD AND ABUSE ACT

43.

7 Springs re-alleges and re-avers the allegations set forth in Paragraphs 1 through 42 as if fully stated herein verbatim.

44.

7 Springs computers, computer systems, website and servers are "protected computers" as the term is defined in 18 U.S.C. § 1030(e) ("Protected Computers").

45.

At all times relevant, Defendants were not authorized to access 7 Springs' Protected Computers.

46.

Defendants knew that they were not authorized to access 7 Springs Protected Computers after Osborne's services were completed.

47.

Defendants have altered information on 7 Spring's Protected Computers in an effort to redirect business to Parts Hangar and Integrated.

48.

Defendants' foregoing conduct is in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

49.

7 Springs has suffered actual damages and loss as a result of Defendants conduct described above in an amount to be proven at trial, but in no event less than $75,001.

## COUNT II
## VIOLATIONS OF O.C.G.A. § 16-9-90  OF THE
## GEORGIA COMPUTER SYSTEMS PROTECTIONA CT

50.

7 Springs re-alleges and re-avers the allegations set forth in Paragraphs 1 through 49 as if fully stated herein verbatim.

51.

Defendants engaged in "computer theft" as defined the term is defined in O.C.G.A. § 16-9-93(a).

52.

Defendants engaged in "computer trespass" as the term is defined in O.C.G.A. § 16-9-93(b).

53.

Defendants engaged in "computer forgery" as the term is defined in O.C.G.A. § 16-9-93(c).

54.

As a direct proximate result of Defendant's foregoing conduct, 7 Springs has been damaged in an amount to be proven at trial and is entitled to lost profits and the costs incurred to sustain this action.

**COUNT III**
**VIOLATIONS OF O.C.G.A. § 16-14-4(B) OF THE GEORGIA RACKETEERING INFLUENCECORRUPT ORGANIZATIONS ACT (RICO)**

55.

7 Springs re-alleges and re-avers the allegations set forth in Paragraphs 1 through 54 as if fully stated herein verbatim.

56.

The Georgia RICO Act is codified at O.C.G.A. §§ 16-4-1 *et seq.*

57.

Defendants are each a "person" within the meaning of O.C.G.A. § 16-14-4.

58.

Both Parts Hangar and Integrated are "enterprise[s]" within the meaning of O.C.G.A. § 16-14-3(6).

59.

Parts Hangar, Integrated, and Osborne also form an "association in fact" enterprise within the meaning of O.C.G.A. § 16-14-3(6) (the "Osborne Enterprise").

60.

Osborne conducts or participates in, directly or indirectly, the Osborne Enterprise, in that he actively manages Parts Hangar's affairs as its Vice President, and actively manages Integrated's affairs as its President.

61.

Parts Hangar engaged in "racketeering activity" as defined by O.C.G.A. § 16-4-3 (9)(A)(xxviii) when it committed "computer theft" as defined by O.C.G.A. § 16-9-93(a) in furtherance of the scheme to secretly redirect customers and business to its website.

62.

Parts Hangar engaged in "racketeering activity" as defined by O.C.G.A. § 16-4-3 (9)(A)(xxviii) when it committed "computer trespass" as defined by O.C.G.A. § 16-9-93(b) in furtherance of the scheme to improperly redirect 7 Spring's customers and business to Parts Hangar and Integrated.

63.

Parts Hangar engaged in "racketeering activity" as defined by O.C.G.A. § 16-4-3 (9)(A)(xxviii) when it committed "computer forgery" as defined by O.C.G.A. § 16-9-93(c) in furtherance of the scheme to improperly redirect 7 Spring's customers and business to Parts Hangar and Integrated.

For example, and without limitation, in furtherance of the scheme:

a.   On information and belief, Osborne accessed the Website's HTLM Code and altered at least thirty (30) hyperlinks to redirect traffic to the Parts Hangar website; and

b.   On information and belief, Parts Hangar's website has received a yet to be determined number of customers as a result of this redirection.

64.

The foregoing acts comprise separate parts of one scheme by the Osborne Enterprise to improperly redirect 7 Spring's customers and business to Parts Hangar and Integrated and these acts constitute a "pattern of racketeering activity" within the meaning of O.C.G.A. § 16-14-3 (8)(A).

65.

As a direct and proximate result of Defendants' pattern of racketeering activity and the predicate acts that comprise it, 7 Springs has suffered an injury in

an amount to be proven at trial, and is entitled to three times that amount proven pursuant to O.C.G.A. § 16-14-6(c) ("Treble Damages").

66.

The injuries suffered by 7 Springs as a result of Defendants' violation of O.C.G.A. § 16-14-6(b) are separate and distinct injuries from the injuries that 7 Springs has suffered as a consequence of Defendants' individual predicate acts.

67.

Each Defendant is liable for the other's unlawful acts, because the Defendants have ratified such unlawful acts by accepting the fruits and proceeds of the other's illegal activities after having notice and knowledge of the nature of the same.

**COUNT IV**
**TRESPASS**

68.

7 Springs re-alleges and re-avers the allegations set forth in Paragraphs 1 through 54 as if fully stated herein verbatim.

69.

Defendants have trespassed onto 7 Spring's property—including, but not limited to, unauthorized access to 7 Spring's Protected Computers, computer systems, networks, website, and databases.

70.

7 Springs common law right to its property has been violated by Defendants

trespasses.

71.

Defendants have trampled upon 7 Springs' property.

72.

Defendants have interfered with 7 Springs right, title, use, and enjoyment of

its property, including but not limited to its Protected Computers.

73.

As a direct and proximate result of Defendants trespasses, 7 Springs has

been damaged in an amount to be proven at trial.

74.

Defendants multiple premeditated actions demonstrate a deliberate, willful,

reckless, an callous disregard for 7 Springs' property rights and con

sequently Defendants' egregious actions warrant an award of punitive

damages.

75.

7 Springs demands an award including all of its attorneys' fees and costs, all damages entitled to it as a matter of law, and punitive damages for the egregious manner and number of Defendants' premeditated and intentional trespasses.

## COUNT V
## CONVERSION

76.

7 Springs  re-alleges and re-avers the allegations set forth in Paragraphs 1 through 42 as if fully stated herein verbatim.

77.

Defendants unauthorized access to 7 Springs "protected computers" and subsequent redirection of web customers to their own website has amounted to a taking of 7 Springs web content and traffic for Defendants own use.

78.

As a direct result of Defendants conversion of 7 Springs property, including but not limited to web traffic, sales, web presence, name, reputation, and web content, 7 Springs has been damaged in an amount to be proven at trial.

79.

Defendants multiple premeditated actions, and specifically the conversion of 7 Springs' property, demonstrate a deliberate, willful, reckless, an callous disregard for 7 Springs' property and consequently Defendants' egregious actions warrant an award of punitive damages.

80.

7 Springs demands an award including all of its attorneys' fees and costs, all damages entitled to it as a matter of law, and punitive damages for the egregious manner and number of Defendants' premeditated and intentional conversion of 7 Springs' property.

## COUNT VI
## UNJUST ENRICHMENT

81.

7 Springs reasserts and re-alleges the allegations set forth in Paragraphs 1 through 80 as if fully stated herein verbatim.

82.

7 Springs has utilized significant resources in creating and maintaining the Website and cultivating the customer relationships and reputation that supports its business.

83.

Upon information and belief, Defendants have received monies as a direct result of the foregoing illegal conduct.

84.

Upon information and belief, Defendants have received increase web traffic as the result of the foregoing illegal conduct.

85.

As a proximate result of Defendants' foregoing conduct, Defendants have been unjustly enriched at 7 Spring's expense, and Defendants has and owes a legal duty to 7 Springs to reimburse it in an amount to be proven at trial.

## COUNT VII
## INJUNCTIVE RELIEF

86.

7 Springs reasserts and re-alleges the allegations set forth in Paragraphs 1 through 85 as if fully stated herein verbatim.

87.

Defendants illegal conduct is ongoing as visitors to the Website continue to be redirected to Parts Hangars website and, as a result, 7 Springs continues to lose customers, web presence, reputation in the marketplace, and their associated revenues.

88.

7 Springs is suffering and will continue to suffer immediate and irreparable injury that is not readily compensable by money if an injunction is not granted.

89.

The injury to 7 Springs outweighs any harm that would be inflicted upon Defendants if injunctive relief is granted.

90.

7 Springs has exhibited a likelihood of success on the merits.

91.

7 Springs has "clean hands" and is entitled to equitable relief.

92.

The public interest will not be adversely affected in granting injunctive relief as the public has a strong interest in preserving the sanctity of protected computer systems and avoiding consumer misdirection as a result of technological sleights of hand.

93.

For the foregoing reasons, unless Defendants are temporarily restrained and preliminarily and permanently enjoined from the foregoing conduct, 7 Springs will be irreparably injured by its loss of customers, prospective customers, loss of

business reputation, other present economic losses which are currently unascertainable, and future economic losses which are presently incalculable.

94.

7 Springs has no adequate remedy at law for the immediate and irreparable harm it is suffering.

WHEREFORE, 7 Springs prays that the Court grant the following relief:

(a)     That 7 Springs be awarded a temporary restraining order and preliminary and permanent injunctive relief prohibiting Defendants from utilizing the 7 Spring's website to redirect web visitors and customers to its websites;

(b)     That 7 Springs be awarded compensatory damages, jointly and severally against all Defendants, for losses resulting from Defendants' activities;

(c)     That 7 Springs be awarded punitive damages, jointly and severally against all Defendants, as a result of Defendants' willful and malicious conduct;

(d)     That 7 Springs be awarded prejudgment interest, jointly and severally against all Defendants, at the maximum allowable rate under the law;

(e)     That 7 Springs be awarded all damages, jointly and severally against all Defendants, allowable under the Computer Fraud and Abuse Act;

(f)     That 7 Springs be awarded its reasonable attorneys' fees and litigation costs, jointly and severally against all Defendants;

(g)     That Defendants be required to disgorge any monies they have received as a result of being unjustly enriched; and

(h)     That 7 Springs be granted such other relief as the Court may deem just and proper.

Respectfully submitted this 16th day of December, 2013.

KAUFMAN, MILLER & FORMAN, P.C.


/s/ Robert J. Kaufman
Robert J. Kaufman
Georgia Bar No. 567217
Alex B. Kaufman
Georgia Bar No. 136097
Matthew D. Treco
Georgia Bar No. 802181

8215 Roswell Road
Building 800
Atlanta, Georgia 30350
T: (770) 390-9200 xt 16
F: (770) 395-6720
*Attorneys for Plaintiff*

<u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULES</u>

The undersigned hereby certifies that he has complied with the local rules concerning the formatting, margins, page spacing, and font – which is double spaced, 14 point font in Times New Roman.

This 16th day of December, 2013.

**KAUFMAN, MILLER & FORMAN, P.C.**

/s/ Robert J. Kaufman
Robert J. Kaufman
Georgia Bar No. 567217
Alex B. Kaufman
Georgia Bar No. 136097
Matthew D. Treco
Georgia Bar No. 802181

8215 Roswell Road
Building 800
Atlanta, Georgia 30350
T: (770) 390-9200 xt 16
F: (770) 395-6720
*Attorneys for Plaintiff*