# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| 7 SPRINGS ELECTRONICS, INC. )<br>)<br>   *Plaintiff*, )<br>)<br>vs. )<br>)<br>PARTS HANGAR, INC., )<br>INTEGRATED PUBLISHING, INC., )<br>and RICHARD OSBORNE Individually )<br>)<br>   *Defendants*. )<br>) | **Civil Action Number:**<br>_____ |

## MEMORANDUM OF LAW IN SUPPORT OF
## 7 SPRINGS ELECTRONICS, INC.'S EMERGENCY MOTION FOR
## <u>TEMPORARY RESTRAINING ORDER</u>

Pursuant to Fed. R. Civ. P. 65 (b), Plaintiff 7 SPRINGS ELECTRONICS, INC. (hereinafter, "7 Springs") submits this Memorandum in Support of its Motion for a Temporary Restraining Order.

### <u>INTRODUCTION</u>

Founded in 2007, 7 Springs is one of the world's largest independent stocking distributors of electronic components with locations in the United States, Asia, Mexico, and the United Kingdom. These components include, without limitation, integrated circuits, passive components, and interconnect products.

Specifically, 7 Springs purchases excess electronic component inventories and remarkets globally through its worldwide contacts and experienced sales staff. 7 Springs remarkets these components through services that include lot purchasing, consignment arrangements, end-of-life buys, and asset recovery. 7 Springs is a strategic partner for manufacturers including AMD, Analog Device, Fairchild Semiconductor, Infineon, Intel, International Rectifier, Maxim, National Semiconductor, and Vishay Intertech. 7 Springs also supplies many of the large franchise distributors. 7 Springs conducts a substantial portion of its business using its online presence and internet sales, specifically through its active website.

Defendants have hacked into 7 Springs' website and now direct customers and potential sales belonging to 7 Springs to Defendants. *See* <u>Verified Complaint for violations of The Computer Fraud and Abuse Act, Georgia Computer Systems Protection Act, Georgia RICO, Trespass, Conversion, Unjust Enrichment and Prayer for Injunctive Relief</u>, incorporated herein by Reference.

7 Springs recently discovered Defendants' illegal actions and consequently initiated these emergency proceedings, including but not limited to its Emergency Motion for Temporary Restraining Order pursuant to Fed. R. Civ. P. 65 (b) . Granting 7 Springs' Emergency Motion for Temporary Restraining Order is proper as (1) 7 Springs has shown that its case has a substantial likelihood of prevailing on

the merits; (2) 7 Springs will be irreparably harmed if its Motion is not granted; (3) when balancing the equities, the irreparable harm suffered by 7 Springs outweighs any harm to Defendants; and (4) the public interest is served by granting 7 Springs' Motion.

## FACTUAL BACKGROUND

7 Springs has set forth the underlying facts in its accompanying Verified Complaint, which it hereby incorporates by reference as if fully set forth herein verbatim.

## LEGAL ARGUMENT

### A.   The Court May Enter Restraining Orders Provided Certain Criteria Are Met.

The Court may issue a temporary restraining order with or without notice—written or otherwise—if the verified complaint clearly shows that, among other things, immediate and irreparable injury or damage will occur to the movant before the adverse party voices its opposition. Fed. R. Civ. P. 65 (b). To prevail on an application for such relief the movant must show: (i) a substantial likelihood that it will succeed on the merits (ii) irreparably harm will occur if the motion is not granted (iii) a balancing of the equities shows that the aforementioned harm outweighs any harm that the non-movant would suffer if the motion is granted (iv)

the public interest is served by granting relief for the movant. *See Shiavo ex rel. Schindler v. Shiavo*, 403 F.3d 1223, 1226 (11th Cir. 2005).

      **B.**    **7 Springs Is Substantially Likely to Succeed on the Merits.**

At present, 7 Springs' web traffic and customers are being redirected to a competitor's—Defendant Parts Hangar, Inc.—website. There is little doubt that the changes made to 7 Springs' website—in support of this redirection—were executed by Richard Osborne as he was responsible for designing the 7 Springs website several years ago, and he is also one of Parts Hangar, Inc.'s (hereinafter, "Parts Hangar") principals. At the present time 7 Springs' sales and are significantly depressed and it is highly likely that the redirected web traffic is the reason. Put another way, Parts Hangar is redirecting 7 Springs customers and prospective customers to its own website for its own gain. Accordingly, Defendants violated the federal Computer Fraud and Abuse Act, the Georgia Computer Systems and Protection Act, and are being unjustly enriched as a result, and, therefore, 7 Springs is likely to prevail on these claims and the others contained in its Complaint.

      **C.**    **7 Springs Is Currently Being Harmed and Will Suffer Irreparable Harm if the Court Does Not Grant Its Motion.**

The Eleventh Circuit has explained that an injury may be described as "irreparable" if it cannot be cured "through monetary remedies." *Ferrero v.*

*Associated Materials, Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991). FACTS FACTS FACTS. The Eleventh Circuit, among others, has consistently held that a loss of customers and, as a result, future profits, is an irreparable injury that justifies the issuance of a temporary restraining order. *See, e.g.*, *Bell Telecomm. V. MCImetro Access Transmission Services*, 425 F.3d 964, 970 (11th Cir. 2005) (explaining that a loss of customers is an "irreparable injury"); *Ferrero* 923 F.2d at 1449 (explaining the same); *Warren v. City of Athens, Ohio*, 411 F.3d 697, 712 (6th Cir. 2005) (finding that loss of future profits qualifies as an "irreparable injury"); *Ross-Simons of Warwick v. Baccarat*, 102 F.3d 12, 19–20 (1st Cir. 1996) (same along with customers); *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 552 (4th Cir. 1994) (explaining that "the possibility of permanent loss of customers to a competitor" is an irreparable injury).

As explained above, Defendants current effort to redirect 7 Springs' web traffic is resulting in lost customers and sales, and, potentially, damage to 7 Springs' goodwill. These injuries have long been recognized as irreparable, such damage is difficult, if not nearly impossible, to measure. *See, e.g.*, *Ferrero*, 923 F.2d at 1449 (holding loss of customer goodwill is an irreparable injury); *Ross-Simons of Warwick, Inc.*, 102 F.3d at 19 (holding the same); *Multi-Channel TV*

*Cable*, 22 F.3d at 552 (same). In the situation at bar, 7 Springs' goodwill is exposed to a great threat.

7 Springs is a leading electronics parts provider with customers depending upon it from around the world. These customers navigate to the 7 Springs website intending on using a trusted electronics parts provider. Through artifice and technological diversion, these customers are led to Defendant Parts Hangar. These prospective customers may now think that 7 Springs is no longer operational or that Defendant Parts Hangar has acquired them.[1] Alternatively, customers may think that Defendant Parts Hangar is a partner of 7 Springs. If, therefore, Parts Hangar provides inadequate services this will reflect poorly on 7 Springs. Ultimately, however, 7 Springs is harmed because customers that would otherwise use their services are being diverted to a competitor.

### D. Balancing the Equities Counsels in Favor of Granting 7 Springs' Motion.

Should this injunction not be granted, 7 Springs web traffic and customers will continue to be improperly diverted to Defendant Parts Hangar, and, therefore, 7 Springs will continue to lose revenue. Revenue it would otherwise earn from customers who are intending to patronize its website; customers who patronize its

---

[1] Often, acquired companies redirect web traffic to the acquirer for a short period to avoid customer confusion. To the contrary, here this tactic will foment customer confusion.

website based upon its reputation built by years of dedicated global service. On the other hand, if this injunction is granted, Defendant Parts Hangar will merely be foreclosed from surreptitiously piggy-backing on the aforementioned goodwill and confusing 7 Spring's customers. Instead, Defendant Parts Hangar will be forced to go to the market and solicit its own customers through its own efforts like any other competitor.

### E. Granting 7 Springs' Motion will Serve the Public Interest.

Granting this motion for temporary restraining order will doubtless serve the public's interest in preserving the sanctity of property and the interest in ensuring that a consumer's choice is respected. *See Specialty Chemicals & Services, Inc. v. Chandler*, 1988 WL 618583, at * (N.D. Ga. Sept. 29, 1988) ("[I]t is axiomatic that our laws protect private property and set standards for business competition and that obedience to such laws is in the public interest"). No doubt, these two interests intersect given the facts of this case, and Defendants have clearly chosen to disregard public interest in light of their blatant disobedience. While a website and web traffic may not conform to traditional notions of tangible property, these forms of property are now ubiquitous and the protection of these things serves the same public interests as respecting the metes and bounds of a homestead.

Further, if a customer chooses to patronize a particular business, its competitor ought not secretly divert that customer to itself treating the customer as a mindless consumer of goods and freeriding on the goodwill of the competing business the customer initially had in mind. If this is permitted, no businesses would seek to innovate or invest in themselves for fear that lazy competitors would intervene at the last possible moment. Leading providers of services would falter and consumers would be want for quality goods and services.

Respectfully submitted this 16th day of December, 2013.

          **KAUFMAN, MILLER & FORMAN, P.C.**

          /s/ Robert J. Kaufman
          Robert J. Kaufman
          Georgia Bar No. 567217
          Alex B. Kaufman
          Georgia Bar No. 136097
          Matthew D. Treco
          Georgia Bar No. 802181

8215 Roswell Road
Building 800
Atlanta, Georgia 30350
T: (770) 390-9200 xt 16
F: (770) 395-6720
*Attorneys for Plaintiff*

# CERTIFICATE OF COMPLIANCE

The undersigned attorney hereby certifies, pursuant to L.R. 5.1, that the foregoing Emergency Motion for Temporary Restraining Order was prepared in accordance with L.R. 5.1 using Times New Roman in 14 point font.

Respectfully submitted this 16th day of December, 2013.

                                                      **KAUFMAN, MILLER & FORMAN, P.C.**

                                                      /s/ Robert J. Kaufman
                                                      Robert J. Kaufman
                                                      Georgia Bar No. 567217
                                                      Alex B. Kaufman
                                                      Georgia Bar No. 136097
                                                      Matthew D. Treco
                                                      Georgia Bar No. 802181

8215 Roswell Road
Building 800
Atlanta, Georgia 30350
T: (770) 390-9200 xt 16
F: (770) 395-6720
*Attorneys for Plaintiff*