**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

| | | |
|---|---|---|
| 7 SPRINGS ELECTRONICS, INC. | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | **Civil Action Number:** |
| vs. | ) | 8:14-cv-00266-EAK-AEP |
| | ) | |
| PARTS HANGAR, INC., | ) | |
| INTEGRATED PUBLISHING, INC. d/b/a | ) | |
| STRATEGICO, and RICHARD | ) | |
| OSBORNE, Individually | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

**VERIFIED SECOND AMENDED COMPLAINT FOR VIOLATIONS OF THE
COMPUTER FRAUD AND ABUSE ACT, LANHAM ACT, FLORIDA
DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, CIVIL REMEDIES FOR
CRIMINAL PRACTICES ACT, FLORIDA RICO ACT, TRESPASS,
CONVERSION, BREACH OF CONTRACT, NEGLIGENCE, UNJUST
ENRICHMENT, AND PRAYER FOR INJUNCTIVE RELIF**

COMES NOW Plaintiff 7 SPRINGS ELECTRONICS, INC. (hereinafter, "7 Springs") by and through its attorneys, and files this its Verified Second Amended Complaint for violations of The Computer Fraud and Abuse Act, Lanham Act, Florida Deceptive And Unfair Trade Practices Act, Civil Remedies For Criminal Practices Act, Florida Rico Act, Trespass, Conversion, Breach of Contract, Negligence, Unjust Enrichment and Prayer for Injunctive Relief Against Defendants PARTS HANGAR, INC. (hereinafter, "Parts Hangar"), INTEGRATED PUBLISHING, INC. (hereinafter,

"Integrated"), and RICHARD OSBORNE (hereinafter, "Osborne") (hereinafter, collectively the "Defendants") and states as follows:

<u>**JURISDICTION AND VENUE**</u>

1.

7 Springs is a Florida subchapter S corporation with its nerve center and principal place of business at 105 Weatherstone Drive, Suite 650, Woodstock, Georgia 30188.

2.

7 Springs has filed with the Georgia Secretary of State to qualify to do business in Georgia. *See* **Exhibit "1**", which is incorporated herein by reference.

3.

Parts Hangar is a Florida domestic corporation with its principal place of business at 10229 Key Lantern Drive, New Port Richey, Florida 34654.

4.

Integrated is a Florida domestic corporation doing business as Strategico with its principal place of business at 10229 Key Lantern Drive, New Port Richey, Florida 34654.

5.

Pursuant to Fla. Ann. Stat. § 48.081 (1)(a) Parts Hangar may be served with the Summons and Complaint through its President Erly Osborne, at 10229 Key Lantern Drive, New Port Richey, Florida 34654.

6.

Pursuant to Fla. Ann. Stat. § 48.081 (1)(a) Integrated may be served with the Summons and Complaint through its Vice President Erly Osborne, at 10229 Key Lantern Drive, New Port Richey, Florida 34654.

7.

Osborne is the President of Integrated, and the Vice President of Parts Hangar, and he may be served with the Summons and Complaint at his residence: 10229 Key Lantern Drive, New Port Richey, Florida 34654.

8.

This Court has subject matter jurisdiction of this civil action pursuant to 28 U.S.C. § 1331 because it arises under federal law, specifically the Computer Fraud and Abuse Act codified at 18 U.S.C. § 1030 *et seq.*, and the Lanham Act codified at 15 U.S.C. § 1125 *et seq.*

9.

This Court has supplemental jurisdiction over all of Plaintiff's claims arising under state law pursuant to 28 U.S.C. § 1367.

10.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims asserted, and damages consequently incurred, occurred in this District.

## FACTUAL BACKGROUND

11.

Founded in 2007, 7 Springs is one of the world's largest independent stocking distributors of electronic components with locations in the United States, Asia, Mexico, and the United Kingdom. These components include, without limitation, integrated circuits, passive components, and interconnect products.

12.

Specifically, 7 Springs purchases excess electronic component inventories and remarkets them globally through its worldwide contacts and experienced sales staff.  7 Springs remarkets these components through services that include lot purchasing, consignment arrangements, end-of-life buys, and asset recovery.

13.

7 Springs is a strategic partner for manufacturers including AMD, Analog Device, Fairchild Semiconductor, Infineon, Intel, International Rectifier, Maxim, National Semiconductor, and Vishay Intertech. 7 Springs also supplies many of the large franchise distributors.

14.

7 Springs conducts a substantial portion of its business using its online presence and internet sales, specifically through its active website.

15.

Parts Hangar is a corporation purportedly engaged in the same or similar business as 7 Springs.

16.

Integrated purports to be a leading online source of military specifications and educational publications.

17.

Parts Hangar's website describes the synergy between itself and Integrated as one in which customers can "cross-referenc[e] the extensive database that [Integrated] possesses" and "access . . . parts listed in the online training manuals and educational items as listed by the . . . NSN (National Stock Number) as well as military part number." *See* "Parts Hangar Website—About Us" a true and accurate copy of which is attached hereto as **Exhibit "2"** and incorporated herein by reference.

18.

Upon information and belief, Integrated existed in some form prior to the creation of Parts Hangar. *See* "Electronic Articles of Incorporation—Integrated Publishing, Inc." a true and accurate copy of which is attached hereto as **Exhibit "3"** and incorporated herein by reference.

19.

Upon information and belief, Parts Hangar had been a dormant and inactive corporation for approximately two (2) years up until October 2013.

20.

Upon information and belief, Parts Hangar was reactivated on or around October 14, 2013. *See* "Electronic Articles of Incorporation—Parts Hangar, Inc." a true and

accurate copy of which is attached hereto as **Exhibit "4"** and incorporated herein by reference.

21.

Upon information and belief, Defendants have at all times commingled funds and acted as one another's alter ego.

22.

Sometime in 2007, 7 Springs engaged Osborne to design its current website located at: http://www.7springselectronics.com (hereinafter, the "Website").

23.

Sometime in 2007, Osborne and 7 Springs President, founder, and owner, Rod Cook, executed a contract that lists the services to be provided by Osborne in delivering the Website.

24.

Since late 2007, 7 Springs has used the Website designed and delivered by Osborne.

25.

The Website accounts for most, if not all, of 7 Springs' business as customers rely on its product list to stay informed about what 7 Springs offers.

26.

Upon information and belief, Osborne retained access to the HyperText Markup Language (hereinafter, "HTML Code") that controls the Website's functions.

27.

On August 31, 2013, 7 Springs President, founder, and owner, Rod Cook, suddenly passed away.

28.

Rod Cook's ex-wife, Audrey Cook, has been appointed by the Estate of Rod Cook's Personal Representative to serve as the President and Chief Executive Officer for 7 Springs.

29.

Parts Hangar was reactivated approximately six (6) weeks <u>after</u> Rod Cook's death.

30.

Upon information and belief, Osborne—on behalf of Parts Hangar and Integrated—and sometime shortly after Rod Cook's passing, improperly and without either authority or permission, accessed the Website and altered the HTML Code controlling the hyperlinks associated with parts numbers listed on the Website's inventory such that these hyperlinks redirect website visitors to Parts Hangar's website.

31.

Upon information and belief, Defendants "hacked" into 7 Springs' Website.

32.

Upon information and belief, Defendants "hacked" into 7 Springs' computer system.

33.

Upon information and belief, Defendants exceeded their authorized access into 7 Springs' Website.

34.

Upon information and belief, Defendants exceeded their authorized access into 7 Springs' computer system.

35.

Upon information and belief, Osborne altered the hyperlinks associated with the parts listed at the following web address: http://www.7springselectronics.com/products.htm.

36.

As a result of Defendants hacking of the Website, when customers click on the parts numbers listed on the webpage http://www.7springselectronics.com/products.htm, they are redirected to Defendant Parts Hangar's website (*e.g.*, http://0-1.components-source.com).

37.

Upon information and belief, these redirected customers were unknowingly purchasing products from Defendant Parts Hangar instead of 7 Springs.

38.

Upon information and belief, 7 Spings' customers and potential customers are confused as a result Defendants redirecting web traffic from the Website to Defendants Parts Hangar.

39.

Upon information and belief, Defendants took this action to drive business to Parts Hangar in support of its relationship with its sister company Integrated.

40.

Upon information and belief, 7 Springs ceased to receive customer orders because these customers were being redirected to the Parts Hangar website and are, therefore, ordering parts from Parts Hangar.

41.

For many weeks these customers were redirected to the Parts Hangar website and 7 Springs continues to be harmed as a result.

42.

Defendants' unauthorized access and hacking of 7 Springs website caused requests for quote inquiries to be redirected in such a manner that 7 Springs did not receive these requests for quotes and consequently lost business opportunities.

43.

Prior to Defendants' harmful actions, 7 Springs was current on all payments due to Defendants.

44.

7 Springs has lost name recognition, customers, customer traffic, and thousands of dollars as a direct result of Defendants' actions.

45.

7 Springs has incurred the cost of hiring new programmers to attempt to fix Defendants' harmful actions, and to repair the 7 Springs Website and computer.

46.

7 Springs business has not recovered from Defendants' actions.

47.

7 Springs has been damaged in an amount to be proven at trial.

48.

Prompted by the sudden and significant decline in customer orders, a 7 Springs employee discovered that the Website's visitors were being redirected to the Parts Hangar website if and when they "clicked" on the hyperlinks associated with parts numbers listed on the Website—specifically, the webpage referenced in Paragraph 32.

49.

On December 13, 2013 Plaintiff engaged the undersigned attorneys to bring this action and obtain injunctive relief against Defendants.

50.

The United States District Court for the Northern District of Georgia granted 7 Springs injunctive relief.

51.

By agreement, this case was transferred to the United States District Court for the Middle District of Florida.

## CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF 18 U.S.C. § 1030(e) OF
### THE COMPUTER FRAUD AND ABUSE ACT

52.

7 Springs re-alleges and re-avers the allegations set forth in Paragraphs 1 through 51 as if fully stated herein verbatim.

53.

7 Springs computers, computer systems, website and servers are "protected computers" as the term is defined in 18 U.S.C. § 1030(e) ("Protected Computers").

54.

At all times relevant, Defendants were not authorized to access 7 Springs' Protected Computers.

55.

Defendants knew that they were not authorized to access 7 Springs Protected Computers after Osborne's services were completed.

56.

Defendants exceeded their authorized access to 7 Springs' Website.

57.

Defendants exceeded their authorized access to 7 Springs' Protected Computers.

58.

Defendants have altered information on 7 Spring's Protected Computers in an effort to redirect business to Parts Hangar and Integrated.

59.

Defendants' foregoing conduct is in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

60.

As a result of Defendants' conduct described above, 7 Springs has suffered actual damages and loss in an amount to be proven at trial.

**COUNT II**
**VIOLATIONS OF 15 U.S.C. § 1125(a)**
**OF THE LANHAM ACT**

61.

7 Springs re-alleges and re-avers the allegations set forth in Paragraphs 1 through 60 as if fully stated herein verbatim.

62.

In violation of 15 U.S.C. § 1125(a) Defendants altered the HTML code on the Website to redirect web customers to the Parts Hangar website thereby falsely representing that Parts Hangar's services and products are associated with, sponsored by, and approved by 7 Springs.

63.

Defendants' redirection is likely to cause confusion and to deceive customers into incorrectly believing that Defendants are affiliated with 7 Springs.

64.

Defendants' redirection is likely to cause customers to incorrectly believe that 7 Springs sponsors and approves of Defendants' goods and services.

65.

As a result of Defendants' conduct described above, 7 Springs has suffered actual

damages and losses in an amount to be proven at trial.

**COUNT III**
**VIOLATIONS OF Fla. Stat. § 501.204(1) OF THE**
**FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**

66.

7 Springs re-alleges and re-avers the allegations set forth in Paragraphs 1 through

65 as if fully stated herein verbatim.

67.

The Florida Deceptive and Unfair Trade Practices Act is codified at Fla. Stat. §§

501.201, *et seq*.

68.

7 Springs is a "consumer" within the meaning of Fla. Stat. § 501.203(7).

69.

Defendants violated Fla. Stat. § 501.204(1) when they altered the HTML code on

the Website thus redirecting web customers to the Parts Hangar website thereby engaging

in an unfair and deceptive trade practice.

70.

Defendants' redirection of customers in the ordinary course of their business

amounts to passing off the goods and services of 7 Springs as Defendants' goods and

services.

71.

Defendants' redirection of customers in the ordinary course of their business causes a likelihood of confusion or misunderstanding with regard to 7 Springs' sponsorship and approval of Parts Hangar's goods and services.

72.

Defendants' redirection of customers in the ordinary course of their business causes a likelihood of confusion or misunderstanding with regard to 7 Springs' affiliation, connection, and association with Defendants.

73.

Defendants violated Fla. Stat. § 501.204(1) when they altered the HTML code on the 7 Springs Website causing requests for quote inquiries to be redirected in such a manner that 7 Springs did not receive these requests for quotes thereby engaging in an unfair and deceptive trade practice.

74.

Defendants' redirection of requests precluded 7 Springs from receiving these requests and, therefore, caused 7 Springs to lose business opportunities and incur damages in an amount to be proven at trial.

75.

As a direct and proximate result of Defendants' foregoing conduct, 7 Springs has been damaged in an amount to be proven at trial.

**COUNT IV**
**VIOLATIONS OF FLA. STAT. § 772.103 OF THE CIVIL REMEDIES FOR**
**CRIMINAL PRACTICES ACT**

76.

7 Springs re-alleges and re-avers the allegations set forth in Paragraphs 1 through 75 as if fully stated herein verbatim.

77.

The Civil Remedies for Criminal Practices Act is codified at Fla. Stat. §§ 772.101 *et seq.*

78.

Defendants are each an "enterprise" within the meaning of Fla. Stat. § 772.102(3).

79.

Both Parts Hangar and Integrated are "enterprise[s]" within the meaning of Fla. Stat. § 772.102(3).

80.

Parts Hangar, Integrated, and Osborne also form an "association in fact" enterprise within the meaning of Fla. Stat. § 772.102(3) (the "Osborne Enterprise").

81.

Osborne conducts or participates in, directly or indirectly, the Osborne Enterprise, in that he actively manages Parts Hangar's affairs as its Vice President, and actively manages Integrated's affairs as its President.

82.

Parts Hangar engaged in "criminal activity" as defined by Fla. Stat. § 772.102(1)(a)(21) when it committed "offense[s] against computer users" as defined by Fla. Stat. § 815.06(1) in furtherance of the scheme to secretly redirect customers and business to its website.

83.

For example, and without limitation, in furtherance of the scheme:

a.    On information and belief, Osborne accessed the Website's HTML Code and altered at least thirty (30) hyperlinks to redirect traffic to the Parts Hangar website;

b.    On information and belief, Parts Hangar's website has received a yet to be determined number of customers as a result of this redirection;

c.    On information and belief, Osborne accessed the Website's HTML Code to cause requests for quote inquiries to be redirected in such a manner that 7 Springs did not receive these requests for quotes; and

d.    On information and belief, 7 Springs has lost a yet to be determined number of business opportunities as a result of this redirection.

84.

The foregoing acts comprise separate parts of one scheme by the Osborne Enterprise to improperly redirect 7 Spring's customers and business to Parts Hangar and Integrated and these acts constitute a "pattern of criminal activity" within the meaning of Fla. Stat. § 772.102(4).

85.

As a direct and proximate result of Defendants' pattern of racketeering activity and the predicate acts that comprise it, 7 Springs has suffered an injury in an amount to be proven at trial, and is entitled to threefold the actual damages sustained, and to minimum damages in the amount of $200, and reasonable attorney fees and court costs pursuant to Fla. Stat. § 772.104(1).

86.

The injuries suffered by 7 Springs as a result of Defendants' violation of Fla. Stat. § 772.103 are separate and distinct injuries from the injuries that 7 Springs has suffered as a consequence of Defendants' individual predicate acts.

87.

Each Defendant is liable for the other's unlawful acts, because the Defendants have ratified such unlawful acts by accepting the fruits and proceeds of the other's illegal activities after having notice and knowledge of the nature of the same.

**COUNT V**
**VIOLATIONS OF FLA. STAT. § 895.03 OF THE FLORIDA RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT**

88.

7 Springs re-alleges and re-avers the allegations set forth in Paragraphs 1 through 87 as if fully stated herein verbatim.

89.

The Florida RICO (Racketeer Influenced and Corrupt Organization) Act is codified at Fla. Stat. §§ 895.01 *et seq.*

90.

Defendants are each an "enterprise" within the meaning of Fla. Stat. § 895.02(3).

91.

Both Parts Hangar and Integrated are "enterprise[s]" within the meaning of Fla. Stat. § 895.02(3).

92.

Parts Hangar, Integrated, and Osborne also form an "association in fact" enterprise within the meaning of Fla. Stat. § 895.02(3) (the "Osborne Enterprise").

93.

Osborne conducts or participates in, directly or indirectly, the Osborne Enterprise, in that he actively manages Parts Hangar's affairs as its Vice President, and actively manages Integrated's affairs as its President.

94.

Parts Hangar engaged in "racketeering activity" as defined by Fla. Stat. § 895.02(1)(a)(33) when it committed "offense[s] against computer users" as defined by Fla. Stat. § 815.06(1) in furtherance of the scheme to secretly redirect customers and business to its website.

95.

For example, and without limitation, in furtherance of the scheme:

a.      On information and belief, Osborne accessed the Website's HTML Code and altered at least thirty (30) hyperlinks to redirect traffic to the Parts Hangar website;

    b.      On information and belief, Parts Hangar's website has received a yet to be determined number of customers as a result of this redirection;

    c.      On information and belief, Osborne accessed the Website's HTML Code to cause requests for quote inquiries to be redirected in such a manner that 7 Springs did not receive these requests for quotes; and

    d.      On information and belief, 7 Springs has lost a yet to be determined number of business opportunities as a result of this redirection.

96.

The foregoing acts comprise separate parts of one scheme by the Osborne Enterprise to improperly redirect 7 Spring's customers and business to Parts Hangar and Integrated and these acts constitute a "pattern of racketeering activity" within the meaning of Fla. Stat. § 895.02(4).

97.

As a direct and proximate result of Defendants' pattern of racketeering activity and the predicate acts that comprise it, 7 Springs has suffered an injury in an amount to be proven at trial, and is entitled to any forfeited property or proceeds pursuant to Fla. Stat. § 895.05(7)(b).

98.

The injuries suffered by 7 Springs as a result of Defendants' violation of Fla. Stat. § 895.05(6) are separate and distinct injuries from the injuries that 7 Springs has suffered as a consequence of Defendants' individual predicate acts.

99.

Each Defendant is liable for the other's unlawful acts, because the Defendants have ratified such unlawful acts by accepting the fruits and proceeds of the other's illegal activities after having notice and knowledge of the nature of the same.

## COUNT VI
## TRESPASS

100.

7 Springs re-alleges and re-avers the allegations set forth in Paragraphs 1 through 60 as if fully stated herein verbatim.

101.

Defendants have trespassed onto 7 Springs' property—including, but not limited to, unauthorized access to 7 Spring's Protected Computers, computer systems, networks, website, and databases.

102.

7 Springs' common law right to its property has been violated by Defendants trespasses.

103.

Defendants have trampled upon 7 Springs' property.

104.

Defendants have interfered with 7 Springs' right, title, use, and enjoyment of its property, including but not limited to its Protected Computers and website.

105.

As a direct and proximate result of Defendants trespasses, 7 Springs has been damaged in an amount to be proven at trial.

106.

Defendants multiple premeditated actions demonstrate a deliberate, willful, reckless, and callous disregard for 7 Springs' property rights and consequently Defendants' egregious actions warrant an award of punitive damages.

107.

7 Springs demands an award including all of its attorneys' fees and costs, all damages entitled to it as a matter of law, and punitive damages for the egregious manner and number of Defendants' premeditated and intentional trespasses.

## COUNT VII
## CONVERSION

108.

7 Springs re-alleges and re-avers the allegations set forth in Paragraphs 1 through 51 as if fully stated herein verbatim.

109.

Defendants unauthorized access to 7 Springs' "protected computers" and website and subsequent redirection of web customers to their own website has amounted to a taking of 7 Springs' web content and traffic for Defendants own use.

110.

Defendants unauthorized access to 7 Springs "protected computers" and website and subsequent redirection of requests for quotes in such a manner that 7 Springs did not receive these requests for quotes has amounted to a taking of 7 Springs web content and traffic for Defendants' own use at 7 Springs' expense.

111.

As a direct result of Defendants conversion of 7 Springs' property, including but not limited to web traffic, sales, web presence, name, logo, reputation, and web content, 7 Springs has been damaged in an amount to be proven at trial.

**COUNT VIII**
**BREACH OF CONTRACT**

112.

7 Springs re-alleges and re-avers the allegations set forth in Paragraphs 1 through 51 as if fully stated herein verbatim.

113.

On information and belief, Integrated and Osborne use the Florida registered fictitious name Strategico.

114.

Sometime in 2007, Integrated and Osborne entered into an agreement with 7 Springs to build Seven Springs' Website suitable for "e-commerce" and generate internet search engine leads for 7 Springs' Website.

115.

At all times relevant, Defendants knew that 7 Springs engaged in e-commerce.

116.

By exceeding their authorized access into 7 Springs' Website and computer systems, and altering the Website and computer systems such that visitors are redirected to Parts Hangar's website and requests for quote inquiries are redirected in such a manner that 7 Springs did not receive these requests for quotes, and, thus, undermining sales leads for 7 Springs, Defendants have breached the contract.

117.

As a result of Defendants' breach of contract, 7 Springs has been damaged in an amount to be proven at trial.

**COUNT IX**
**NEGLIGENCE**

118.

7 Springs re-alleges and re-avers the allegations set forth in Paragraphs 1 through 60 as if fully stated herein verbatim.

119.

In the event no contractual relationship exists between the parties, Plaintiff pleads Count IX in the alternative.

120.

Defendants had a common law duty to use reasonable care in conducting their business activities for the protection of its customers and others from foreseeable, unreasonable risks.

121.

By exceeding their authorized access into 7 Springs' Website and computer systems, and altering the Website and computer systems such that visitors are redirected to Parts Hangar's website and requests for quote inquiries are redirected in such a manner that 7 Springs did not receive these requests for quotes, Defendants have breached their duty of care.

122.

But for Defendants' breaching their duty of care, 7 Springs would not have been injured.

123.

Defendants' conduct is the proximate cause of 7 Springs' injury.

124.

As a result of Defendants' willful, reckless negligence and disregard, 7 Springs has been damaged in an amount to be proven at trial.

125.

As a result of Defendants' willful, wanton, and callous disregard for 7 Springs, 7 Springs' customers, and public customers, punitive damages should be awarded against Defendants.

**COUNT X**
**UNJUST ENRICHMENT**

126.

7 Springs reasserts and re-alleges the allegations set forth in Paragraphs 1 through 51 as if fully stated herein verbatim.

127.

7 Springs has utilized significant resources in creating and maintaining the Website and cultivating the customer relationships and reputation that supports its business.

128.

Upon information and belief, Defendants have received monies, increased web traffic, increased name recognition, and other benefits of value as a direct result of the foregoing illegal conduct.

129.

Upon information and belief, Defendants have received increase web traffic as the result of the foregoing illegal conduct.

130.

Upon information and belief, Defendants have received increase prestige and reputation by unlawful association with 7 Springs.

131.

As a proximate result of Defendants' foregoing conduct, Defendants have been unjustly enriched at 7 Springs' expense, and Defendants has and owes a legal duty to 7 Springs to reimburse it in an amount to be proven at trial.

## COUNT XI
## INJUNCTIVE RELIEF

132.

7 Springs reasserts and re-alleges the allegations set forth in Paragraphs 1 through 131 as if fully stated herein verbatim.

133.

Defendants illegal conduct lasted for many weeks as visitors to the Website continue to be redirected to Parts Hangars website and, as a result, 7 Springs continues to lose customers, web presence, reputation in the marketplace, and their associated revenues.

134.

7 Springs was never able to recover from injuries caused by defendants.

135.

7 Springs is suffering and will continue to suffer immediate and irreparable injury that is not readily compensable by money if an injunction is not granted.

136.

The injury to 7 Springs outweighs any harm that would be inflicted upon Defendants if injunctive relief is granted.

137.

7 Springs has exhibited a likelihood of success on the merits.

138.

7 Springs has "clean hands" and is entitled to equitable relief.

139.

The public interest will not be adversely affected in granting injunctive relief as the public has a strong interest in preserving the sanctity of protected computer systems and avoiding consumer misdirection as a result of technological sleights of hand.

140.

For the foregoing reasons, unless Defendants are preliminarily and permanently enjoined from the foregoing conduct, 7 Springs will be irreparably injured by its loss of customers, prospective customers, loss of business reputation, other present economic losses which are currently unascertainable, and future economic losses which are presently incalculable.

141.

7 Springs has no adequate remedy at law for the immediate and irreparable harm it is suffering.

**COUNT XII**
**EQUITABLE ACCOUNTING**

142.

7 Springs reasserts and re-alleges the allegations set forth in Paragraphs 1 through 143 as if fully stated herein verbatim.

143.

Defendants have profited as a result of their misconduct.

144.

The profits received by Defendants as a result of their misconduct are profits to which 7 Springs is entitled.

145.

Defendants are in sole possession of the information documenting profits received and retained by Parts Hangar or otherwise distributed to Parts Hangar's members.

146.

Defendants are in sole possession of the information documenting profits received and retained by Integrated or otherwise distributed to Integrated's members.

147.

Therefore, Seven Springs respectfully requests that the Court, using its equitable powers, order Defendants to provide an accounting for all Parts Hangar and Integrated revenues, profits, and distributions since June 1, 2013, and accounting of any of the following stemming from the aforementioned revenues, profits, and distributions: all accounts, contract rights, instruments, documents, chattel paper, general intangibles (including but not limited to trademarks, trade names, patents, copyrights, and all other forms of intellectual property), tax refunds, returned and possessed goods; all future and present claims against any supplier or vendor; all accounts receivable; all collateral securing any of the foregoing; all deposit accounts, special and general; all equipment and fixtures; all cash and non-cash proceeds of any of the foregoing, in whatever form

(including equipment or any other form of personal property), including proceeds of proceeds; and all investment property.

## COUNT XIII
## CONSTRUCTIVE TRUST

148.

7 Springs reasserts and re-alleges the allegations set forth in Paragraphs 1 through 149 as if fully stated herein verbatim.

149.

By Defendants' wrongful an inequitable conduct toward 7 Springs, Defendants received, accepted, and retained benefits to which they are not entitled. Defendants have, therefore, unjustly enriched themselves to the detriment of 7 Springs.

150.

Defendants' retention of these benefits would be unjust and inequitable, and would result in their unjust enrichment at the expense of 7 Springs, for which it lacks an adequate remedy at law.

151.

Therefore, Seven Springs respectfully requests that the Court, using its equitable powers, impose a constructive trust lien on all ill-gotten profits held and earned by Parts Hangar, any of these profits distributed to Osborne, other shareholders, or other entities, and any of the following stemming from the aforementioned profits: all accounts, contract rights, instruments, documents, chattel paper, general intangibles (including but not limited to trademarks, trade names, patents, copyrights, and all other forms of

intellectual property), tax refunds, returned and possessed goods; all future and present claims against any supplier or vendor; all accounts receivable; all collateral securing any of the foregoing; all deposit accounts, special and general; all equipment and fixtures; all cash and non-cash proceeds of any of the foregoing, in whatever form (including equipment or any other form of personal property), including proceeds of proceeds; and all investment property.

### COUNT XIV
### EQUITABLE LIEN

152.

7 Springs reasserts and re-alleges the allegations set forth in Paragraphs 1 through 153 as if fully stated herein verbatim.

153.

By Defendants' wrongful an inequitable conduct toward 7 Springs, Defendants received, accepted, and retained benefits to which they are not entitled. Defendants have, therefore, unjustly enriched themselves to the detriment of 7 Springs.

154.

Defendants' retention of these benefits would be unjust and inequitable, and would result in their unjust enrichment at the expense of 7 Springs, for which it lacks an adequate remedy at law.

155.

Therefore, Seven Springs respectfully requests that the Court, using its equitable powers, impose an equitable lien on all ill-gotten profits held and earned by Parts Hangar,

any of these profits distributed to Osborne, other shareholders, or other entities, and any of the following stemming from the aforementioned profits: all accounts, contract rights, instruments, documents, chattel paper, general intangibles (including but not limited to trademarks, trade names, patents, copyrights, and all other forms of intellectual property), tax refunds, returned and possessed goods; all future and present claims against any supplier or vendor; all accounts receivable; all collateral securing any of the foregoing; all deposit accounts, special and general; all equipment and fixtures; all cash and non-cash proceeds of any of the foregoing, in whatever form (including equipment or any other form of personal property), including proceeds of proceeds; and all investment property.

WHEREFORE, 7 Springs prays that the Court grant the following relief:

(a)     That 7 Springs be awarded preliminary and permanent injunctive relief prohibiting Defendants from utilizing the 7 Spring's website to redirect web visitors and customers to Defendants' websites;

(b)     That 7 Springs be awarded compensatory damages, jointly and severally against all Defendants, for losses resulting from Defendants' activities;

(c)     That 7 Springs be awarded consequential damages, jointly and severally against all Defendants, for losses resulting from Defendants' breach of contract;

(d)     That after an opportunity to conduct discovery, and upon revelation that Defendants have acted maliciously, callously, willfully, and with a wanton disregard for 7 Springs, 7 Springs' customers, and public customers, 7

Springs be permitted to file a motion to amend this Complaint pursuant to Fla. Stat. 768.72 and Fla. R. Civ. P. 1.190 to add a prayer for an award of punitive damages, jointly and severally against all Defendants;

(e)     That 7 Springs be awarded prejudgment interest, jointly and severally against all Defendants, at the maximum allowable rate under the law;

(f)     That 7 Springs be awarded all damages, jointly and severally against all Defendants, allowable under the Computer Fraud and Abuse Act;

(g)     That 7 Springs be awarded its reasonable attorneys' fees and litigation costs, jointly and severally against all Defendants under Fla. Stat. §§ 501.203, and 772.104(1);

(h)     That Defendants be required to disgorge any monies they have received as a result of being unjustly enriched; and

(i)     That 7 Springs be granted such other relief as the Court may deem just and proper.

Respectfully submitted this 23rd day of June, 2014.


**KAUFMAN, MILLER & FORMAN, P.C.**


/s/ Alex B. Kaufman
Robert J. Kaufman
(*Pro Hac Vice*)
Georgia Bar No. 567217
Alex B. Kaufman
(*Pro Hac Vice*)
Georgia Bar No. 136097
Matthew D. Treco

(*Pro Hac Vice*)
Georgia Bar No. 802181
Samuel J. Warman
Florida Bar No.:  0103196

8215 Roswell Road
Building 800
Atlanta, Georgia 30350
T: (770) 390-9200 xt 16
F: (770) 395-6720
E-mail:rjk@kauflaw.net
        abk@kauflaw.net
        mdt@kauflaw.net
        sjw@kauflaw.net
        *Attorneys for Plaintiff*

**TUCKER & LUDIN, P.A.**

Eric E. Ludin
Florida Bar No.:  351393

5235 16th St. North
St. Petersburg, FL 33702
T: (727) 572-5000
F: (727) 571-1415
E-mail:ludin@tuckerludin.com
*Attorney for Plaintiff*

*I:\WP\CW\8841-001\Pleadings\Draft Pleadings\Second Amended Complaint Final.docx*

## CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2014, I have electronically filed **VERIFIED SECOND AMENDED COMPLAINT FOR VIOLATIONS OF THE COMPUTER FRAUD AND ABUSE ACT, LANHAM ACT, FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, CIVIL REMEDIES FOR CRIMINAL PRACTICES ACT, FLORIDA RICO ACT, TRESPASS, CONVERSION, BREACH OF CONTRACT, NEGLIGENCE, UNJUST ENRICHMENT, AND PRAYER FOR INJUNCTIVE RELIF** with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the attorneys of record.

KAUFMAN, MILLER & FORMAN, P.C.

/s/ Alex B. Kaufman
Robert J. Kaufman
(*Pro Hac Vice*)
Georgia Bar No. 567217
Alex B. Kaufman
(*Pro Hac Vice*)
Georgia Bar No. 136097
Matthew D. Treco
(*Pro Hac Vice*)
Georgia Bar No. 802181
Samuel J. Warman
Florida Bar No.:  0103196

8215 Roswell Road
Building 800
Atlanta, Georgia 30350
T: (770) 390-9200 xt 16
F: (770) 395-6720
E-mail:rjk@kauflaw.net
        abk@kauflaw.net

mdt@kauflaw.net
sjw@kauflaw.net
*Attorneys for Plaintiff*

**TUCKER & LUDIN, P.A.**

Eric E. Ludin
Florida Bar No.:  351393

5235 16th St. North
St. Petersburg, FL 33702
T: (727) 572-5000
F: (727) 571-1415
E-mail:ludin@tuckerludin.com
*Attorney for Plaintiff*

*I:\WP\CW\8841-001\Pleadings\Draft Pleadings\Second Amended Complaint Final.docx*

## <u>VERIFICATION</u>

Personally appeared before the undersigned officer, duly authorized to administer oaths, **AUDREY COOK**, who, upon first being duly sworn on oath, deposes and states that upon her personal knowledge, the facts and allegations in this, VERIFIED SECOND AMENDED COMPLAINT, arè true and correct.

By: Audrey Cook

Sworn to and subscribed
before me, this 2 day
of June, 2014.

Notary Public
My       Commission
Expires: 10·9·2016

[NOTARY SEAL]

